Timothy **WRIGHT** et al.

v.

**BALTIMORE TEACHERS UNION** et al.

**Civ. A. No. 73–934–N.**

United States District Court,
D. Maryland.

Jan. 10, 1974.

John C. Armor, Baltimore, Md., for plaintiffs.

Cosimo C. Abato, Anthony A. Abato, Jr., and Bracken & Abato, Baltimore, Md., for defendants Baltimore Teachers Union, Godfrey Moore, Thomas Hubbard, Robert Younger, Loretta Johnson, Dennis Crosby, Samuel Parham and Ed Horsey.

No appearance entered for defendant American Federation of Teachers.

NORTHROP, Chief Judge.

This matter comes before this Court on a complaint filed under the provisions of the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter referred to as the Act or L.M.R.D.A.), Pub.L. 86–257, 29 U.S.C. § 401 et seq. The plaintiffs are present and expelled members of the defendant Baltimore Teachers Union (BTU) who allege various violations of the L.M.R.D.A. by defendants. The defendants (with the exception of American Federation of Teachers) have moved to dismiss the complaint on the grounds that: (1) the complaint fails to state a claim upon which relief can be granted; (2) the Court lacks jurisdiction over the subject matter as the defendants are expressly excluded from the Act's coverage. Plaintiffs have moved to strike defendants' motion and for a preliminary in-

junction against the use by the individual defendants of the same counsel as representing the defendant unions Baltimore Teachers Union and American Federation of Teachers (AFT). They allege that there would be a conflict of interest were such representation permitted. Implicit in plaintiffs' pleading is an allegation that defendants' motion is null and void since it was not filed by proper counsel.

In a sworn affidavit, defendant Godfrey Moore represents that the Baltimore Teachers Union is an unincorporated association which limits membership to public school teachers and related personnel, employed by the Mayor and City Council, a political subdivision of the State of Maryland. The said union has been the exclusive representative of these employees for the past six years.

In their memorandum, defendants argue L.M.R.D.A.'s definition of "employer" specifically excludes "the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof." 29 U.S.C. § 402(e). From this, defendants conclude that the employees represented by the subject union are not "employees" as defined in § 402(f) because they are employed by the City of Baltimore, an employer specifically excluded from the Act. Therefore, the defendant Baltimore Teachers Union is not a "labor organization" within the meaning of § 402(i) because it is neither an organization "in which employees participate" nor does it exist "for the purpose of dealing with employers" as these terms are defined.

Plaintiffs counter that the L.M.R.D.A. is intended to exempt only employers which are governmental bodies and not the labor organizations themselves. They argue that although "labor organization" is defined in the same terms as in the National Labor Relations Act, the scope of that term as used in the L.M.R.D.A. is much broader. Plaintiffs also contend that the Baltimore Teachers Union is not in fact a union exclusively of

public employees. Its constitution invites private school employees and such individuals have never been excluded from membership. Moreover, it is alleged that the parent of the BTU, defendant American Federation of Teachers, actively seeks and does in fact represent private school employees. Plaintiffs conclude that these are thus two factual bases for holding that the BTU is a labor organization within the meaning of the L.M.R.D.A.

 It is axiomatic that the lack of subject matter jurisdiction is never waived. C. Wright, Federal Courts § 67 (2d Ed. 1970). The consent of the parties cannot confer jurisdiction on this Court. Subject matter jurisdiction involves the power of the court to hear a case and, therefore, the lack of subject matter jurisdiction may be asserted by the court itself, either at the trial or appellate level. 5 Wright & Miller, Federal Practice and Procedure: Civil § 1393, at 866–67 (1st Ed. 1969); 1 Moore, Federal Practice ¶ 0.60 [4] (2d Ed. 1964); McGahey v. Giant Food, Inc., 300 F.Supp. 475 (D.Md.1969) (Kaufman, J.).

The pertinent portion of the L.M.R.D.A. is § 402 under which the following terms are defined:

(e) "Employer" means any employer or any group or association of employers engaged in an industry affecting commerce (1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or (2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee *but does not include the United States or any corporation wholly owned by the Government of*

*the United States or any State or political subdivision thereof.*

(f) "Employee" means any individual *employed by an employer*, and includes any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice or because of exclusion or expulsion from a labor organization in any manner or for any reason inconsistent with the requirements of this chapter.

. . . . . .

. . . . . .

(i) "Labor organization" means a labor organization engaged *in an industry affecting commerce* and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged *in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers* concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, *other than a State or local central body.*

(j) A labor organization shall be deemed to be engaged in an industry affecting commerce if it—

(1) is the certified representative of employees under the . . . National Labor Relations Act, as amended . . . .

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers

within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; . . .. (emphasis supplied).

Plaintiffs point to the legislative history in support of their contention that the Act excludes only public employers from its coverage and not public employees. A review of that history, at the very least, is inconclusive as to that point. As with most pieces of legislation, several predecessors to the L.M.R.D.A. were offered, specifically in this instance, to curb excesses in the labor-management field. In the Senate, Senator John F. Kennedy introduced S. 505 which among its provisions included a definitional section:

"Employer" means any employer or any group or association of employers which is an employer within the meaning of any law of the United States relating to the employment of any employees or which, with respect to any private or *public employment* of employees, may deal with any labor organization . . . [remainder of section is identical with final act].

"Employee" means any individual employed by an employer.

"Labor organization" means any organization of any kind, any agency, or employee representation committee, group association, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment. S. 505, 86th Cong. 1st Sess. § 501 (1959), 1 NLRB, Legislative History of the Labor-Management Reporting and Dis-

closure Act of 1959 at 72–73 (1959) (emphasis supplied).

It is of note that in this first bill the phrase "public employment" was included in the definition of "employer" and there was no exclusion for federal and state governmental bodies.

About this same time, legislation was introduced by the Eisenhower Administration concerning the same problem. The matter was apparently referred to the Department of Labor where a comparison was made between S. 505 and the Administration bill. In its report, which was reprinted in the Congressional Record, the Department stated that in S. 505 "the definitions of 'employer,' 'labor organization,' and 'labor organization engaged in an industry affecting commerce' are so drafted as to raise a question of the inclusion of labor organizations representing public employees . . . ." 105 Cong.Rec. 1164 (daily ed. January 28, 1959).

In March of 1959, Senators Kennedy and Ervin introduced a revised bill, S. 1555, which may have sought to resolve the question raised in the Labor Department's report. Under the definition of "employer," the language referring to "public employment" was deleted and the words "but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof" was inserted at the end. The definition of "employee" was expanded to read "any individual employed by an employer, and includes any individual whose work has ceased as a consequence of, or in connection with any current labor dispute or because of any unfair labor practice." 1 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 386 (1959). The definition of "labor organization" was left intact.

In the report (S.Rep.No.187) accompanying the bill, the term "employer" was specifically held not to "include the United States or any wholly owned Gov-

ernment corporation or any State or political subdivision of a State." 2 U.S. Code Cong. & Admin.News, 1959, p. 2369 (86th Cong. 1st Sess. 1959). On the other hand, a "labor organization" was to be defined in the same terms as in the National Labor Relations Act, as amended:

> The scope of the term as used in the bill, however, is broader than under the National Labor Relations Act, as amended, since the definitions of "employer" and "employee" which are used in defining the term do not contain any of the exclusions, such as those for employers and employees subject to the Railway Labor Act, employers of agricultural labor, employers of public employees (except as provided in subsection (d)), which are provided for in the act. Hence, the definition of "labor organization" included in the bill includes labor organizations representing such employees. 2 U.S.Code Cong. & Admin.News, 1959, p. 2369 (86th Cong. 1st Sess. 1959), 1 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 at 448.

Minority views were submitted by Senators Goldwater and Dirksen who proposed to offer a number of amendments to remedy alleged deficiencies in S. 1555. In their closing remarks, they addressed themselves to the issue before this Court, and it is upon these comments that the defendants rely in their motion:

> In addition we propose to offer or support an amendment to correct an inequity in the committee bill, the import of which seems to have escaped the attention of all of the members of the committee. As the bill now reads labor unions whose membership consists of Government employees and whose employers are governmental bodies or agencies of any kind, Federal, State, local, municipal, etc., are subject to all the requirements, restrictions, and limitations of the bill.
>
> On the other hand, those unions and their Government employee members

(of whom there are about 2½ million) receive few or none of the benefits under existing labor law, both State and Federal. They are completely excluded from the coverage of the Taft-Hartley Act and thus are denied the rights and benefits extended to members of non-governmental unions, and as far as Federal employees are concerned, are specifically denied the right to strike. Similar limitations on the union activities of governmental employees are well-nigh universal at every level of government throughout the Nation.

> Thus the overwhelming majority of Government employees are denied the right to strike or picket, are denied protection against discrimination in employment because of union activities, cannot compel their governmental employers to bargain collectively or to enter into collective bargaining agreements even when their unions represent a majority of the employees in a unit, cannot attain exclusive representation status, and cannot, through their unions, secure union security arrangements requiring membership as a condition of continued employment, such as are authorized by the provisions of the Taft-Hartley Act.

> Hence, these Government employee unions, if not taken out from under the requirements of the committee bill, would be the victims of an inequitable statutory arrangement whereby they would find themselves subject to many Federal regulations and controls without being extended the benefits and rights enjoyed by other types of labor organizations under Federal law.

> . . . Any misconduct, dereliction, or corruption is well guarded against by the right of each member to withdraw from the organization, thus cutting off its only sources of revenue. As a result, corruption, racketeering, gangsterism, find it well nigh impossible to gain a foothold. As a matter of fact, we do not know of a single instance in which these evils have been

found to exist in a union of Government employees . . . .

For these reasons we shall offer and support on the Senate floor an amendment to exclude unions of Government employees from the coverage of the committee bill. 2 U.S.Code Cong. & Admin.News, 1959, pp. 2391–2392 (86th Cong. 1st Sess. 1959), 1 NLRB, Legislative History of the Labor-Management Disclosure and Reporting Act of 1959 at 483–484.

No other members of Congress openly shared these views.

A number of minority amendments were indeed added to the bill but none of them affected the definitional section of the Act. In fact, the record does not reveal any amendment submitted by Senators Goldwater and Dirksen to exempt government unions. As finally passed by the Senate, S. 1555 included several additions to the definition of a "labor organization" but these are of little consequence to the issue before this Court.

In the House, identical bills were introduced by Representatives Landrum and Griffin, H.R. 8400 and 8401. H.R. 8400 was passed by the full House and sent to Conference to be reconciled with S. 1555. The Statement of the Managers on the Part of the House indicates that the House version was virtually substituted for S. 1555 although the Act as signed by President Eisenhower bore the Senate designation. In particular, the House version made many changes in the definitions the Senate bill contained. "In all major respects the compromise the conference agreed on adopt[ed] the *House* versions." H.R. Rep.No.1147, 86th Cong., 1st Sess. 31 (1959), U.S.Code Cong. & Admin.News 1959, p. 2503, 1 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 at 935. (emphasis supplied). Unfortunately, the House bill (H.R. 8400) did not involve the extensive legislative history that S. 1555 did with regard to the issue confronting the Court. The various reports accompanying H.R. 8400 merely paraphrased the statutory language.

If there is any doubt as to the scope of the Act in the legislative history, it has not been shared by the courts which have considered the question. They have held that the L.M.R.D.A. does not apply to government unions and that therefore federal courts do not have subject matter jurisdiction over a suit brought against such union. In New Jersey County and Municipal Council # 61 v. American Fed'n of State, County and Municipal Employees, 80 LRRM 2942 (D.N.J.1972), the district court was asked to enjoin the AFSCME, an international union, from imposing a trusteeship upon one of its locals. The defendant contended that the plaintiff local was outside the remedial coverage of the L.M.R.D.A. because it was not a "labor organization" as defined by Sec. 3(i), 29 U.S.C. § 402(e) (i). To this the court agreed saying that "as a charter of 1959 limits that local to the *representation* of public employees, it is not a labor organization as defined by Sec. 3(e)(i) . . . . ." 80 LRRM at 2949. (emphasis supplied). This, however, was irrelevant for Section 464(a) provided that "[a]ny member or subordinate body of a labor organization" having a grievance resulting from the imposition of a trusteeship may bring an action in federal court. In reading this section, the court interpreted it to require that only the defendant (and not the plaintiff) be a "labor organization" as defined in Sec. 402(i). And it granted the injunction, holding that the international union was such a labor organization. It noted that while public employees comprised most of the AFSCME's locals, it also chartered locals which did not exclusively represent public employees. The court held that where a parent national had chartered a local which "negotiates by collectively bargaining with a non-public employer," that parent body was a "labor organization" within the meaning of the Act. This was true even though public employee locals predominated the

parent union and despite the overwhelming public membership in a mixed local.

The district court in New Jersey in part predicated its holding upon regulations propagated by the Secretary of Labor. In defining the "employer" requirement of Sec. 3(e), the Secretary has said:

> In defining "employer", section 3(e) expressly excludes the "United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof." The term "political subdivision" includes, among others, counties and municipal governments. A labor organization composed entirely of employees of the governmental entities excluded by section 3(e) would not be a labor organization for the purposes of the Act. However, in the case of a national or international labor organization composed of both government locals and non-government or mixed locals, the parent organization as well as its mixed and non-government locals would be "labor organizations" and subject to the Act . . . . [29 C.F.R. § 451.3(a)(4) (rev. 1973)].

It is significant here that both the district court and the Secretary of Labor at least presumed that a union consisting exclusively of government employees was not covered by the Act.

The Third Circuit reversed the district court's judgment but only insofar as finding that the lower court did not have subject matter jurisdiction as to the international union. And in so holding, the court rejected the Secretary's position. The appellate court framed the issue before it as "whether the district court had jurisdiction to enjoin the international [union] under Title III." To answer that question, it was necessary to determine "whether a trusteeship imposed by a parent 'labor organization' upon a local which [was] not a 'labor organization' was regulated by Title III." The court at the outset concluded that the local was not a "labor or-

ganization" under the meaning of the Act because it represented only municipal employees. But the issue arose in that Title III sometimes used the phrase "subordinate body" rather than the term "labor organization." The local argued that "subordinate body" was meant to include public employee unions. In holding that it did not, the Court premised its decision on the fact that:

> Putting aside Title III for the moment, our examination of the Act reveals that its other five titles specifically apply only to "labor organizations" and thus do not affect public employee unions. New Jersey County and Municipal Council, # 61 v. American Fed'n of State, County and Municipal Employees, 478 F.2d 1156, 1158 (3rd Cir. 1973).

It reviewed the various provisions of the Act and concluded that if Congress had intended that Title III govern the imposition of trusteeships upon government unions, it would have clearly stated so. As to the terms "labor organization" and "subordinate body," Congress used these interchangeably and hence were synonymous. In concluding that the Act, and specifically Title III, did not apply to government unions, the court stated:

> Appellees do not discuss the legislative history of the Act, and our examination of this history has revealed nothing to indicate that Congress intended to include public employee unions as subordinate bodies in §§ 302 and 304 while explicitly excluding them from the rest of the Act.

In summary, after considering the legislative history of the LMRDA, its express exclusion of public employee unions from the definition of "labor organization" in § 3(e), (i) and (j), its failure to regulate these unions in the other five titles of the Act, the use of the term "subordinate labor organization" in § 301, and the interchangeability of the terms "labor organization" and "subordinate body" in § 303, the only conclusion which we

can reasonably reach is that public employee unions are not covered by the phrase "subordinate body" . . . .. [478 F.2d at 1160].

Although the Third Circuit did not address itself *explicitly* to mixed locals in its opinion, its very action indicates that no weight was given to the fact that the parent AFSCME chartered locals not exclusively public employees.

Exemption of public employee unions from the Act was also critical in Embry v. American Fed'n of State, County and Municipal Employees, 64 LRRM 2335 (N.D.Ga.1966). In that case, an action was brought by a custodial employee to enjoin an alleged violation of his rights under the L.M.R.D.A. by the local union representing the custodial employees of the county board of education. The complaint stated in part:

> That defendants are the *authorized bargaining agents* for the custodial employees of the Fulton County Board of Education and plaintiff is a custodial employee of said system. (emphasis supplied).

In a brief opinion, the court set out the definitions of "labor organization" and "employer." Since the Act defined a labor organization as one dealing with "employers," and a state or political subdivision was excluded from the statutory definition of "employer," government unions were exempt from the Act's provisions. The court dismissed the action for want of jurisdiction stating that "it is clear that this action cannot be brought under the Labor Management Reporting and Disclosure Act." 64 LRRM at 2336.[1]

The opinion of the courts is shared by several commentators in the labor field. "[A] labor organization is not covered unless it represents, or is chartered to represent, or is actively seeking to represent 'employees' of an 'employer' as those terms are defined in the act. [A] union exclusively representing or seeking to represent only employees of a strictly 'local' employer, or a governmental employer, is not covered." Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va.L.Rev. 195, 199 (1960); see also Beaird, Labor Relations Policy for Public Employees: A Legal Perspective, 4 Ga.L.Rev. 110, 115(1969).

■ Plaintiffs argue that even if public employee unions are exempt under the L.M.R.D.A., the defendant local does not qualify as such a union. They point to the defendant's charter which admits to membership, among others, "private school and parochial school teachers." Plaintiffs maintain that such an invitation strips the union of its "public" status and subjects it to the strictures of the Act. In addition, attention is drawn to the activities of the parent body, the AFT, which allegedly charters locals representing private school employees. Despite these forceful arguments, however, this Court is of the opinion that the intent of the Act as well as subsequent case law is to the contrary.

The real issue to be resolved is whether the defendant local has sought or is seeking to represent non-public employees. The question is one of representation and not membership. Were only the latter involved, the mere admission of a single private employee even

---

1. The issue was also mentioned in Stevens v. Carey, 483 F.2d 188 (7th Cir. 1973), but the court did not decide the case on this point. A federal civil service employee had brought an action against the American Federation of Government Employees, a federally recognized union, for reinstatement as a member. The plaintiff originally claimed jurisdiction under Section 412 of the Act. However, she subsequently conceded to the district court and acknowledged on appeal that the section did not confer jurisdiction over her action. The court concurred and stated:

> Section 402(e) of the Act, which defines "employer," expressly excludes the United States; consequently, jurisdiction over actions by employees of the federal government against their unions does not lie under section 412. [483 F.2d at 190].

without union solicitation would destroy the local's status.[2] The entire thrust of the L.M.R.D.A. is in a different direction. The Act's provisions are drafted in terms of a labor organization representing or seeking to represent employees. The concept of "representation" is embodied in the very definition of "labor organization" stated in Section 402(i) and which is repeated here:

> . . . a labor organization engaged in an industry affecting commerce and includes any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment.

The purpose of a labor union is to represent employees in collective bargaining with their employer. This fact is emphasized in Section 402(j) wherein the several subparagraphs speak to the representation of employees. It is evident, then, that the concept of "representation" encompasses far more than just "membership."

In an affidavit, the president of the defendant BTU stated that the union has never sought to represent non-public employees nor has it ever admitted to membership such persons. Plaintiffs have proffered no evidence in rebuttal. Instead, they have couched their pleadings in negative terms. By affidavit, it is stated that there is no evidence that the BTU has refused to deal with private employers or that it has excluded non-public employees from membership. But nowhere do plaintiffs affirmatively show that the defendant local has engaged in these acts. The Court finds these allegations insufficient to establish jurisdiction under the L.M.R.D.A.

Plaintiffs also seek an injunction against the use of the same counsel by individual and union defendants. The Court need not address itself to this issue since it lacks subject-matter jurisdiction over the cause of action.

---

2. It is entirely possible some individual, a retiree perhaps, may join the union for the mere fellowship that it provides.