NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES et al., Appellants,

v.

Robert M. WHITE et al., Appellees.

No. 22630.

United States Court of Appeals District of Columbia Circuit.

Argued March 5, 1969.

Decided May 13, 1969.

Mr. Francis X. McLaughlin, Washington, D. C., argued the motion for appellants.

Mr. Robert P. Watkins, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the motion for appellees. Mr. Gil Zimmerman, Asst. U. S. Atty., also entered an appearance for appellees.

Before BURGER, WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

At issue in this appeal is whether the district court had jurisdiction to entertain the present cause of action, which seeks to vindicate appellants' right to picket in protest of working conditions. The district court dismissed the action, finding that jurisdiction was lacking.

Appellants, who consist of the National Association of Government Employees, its New York local, and two officers of these organizations, brought an action in the nature of mandamus in the district court against appellees, both individually and as government officials. The employee association (NAGE) and its local had been granted exclusive bargaining recognition with the United States Department of Commerce's Environmental Science Services Administration under Executive Order 10988. 3 C. F.R., 1959–63 Comp., p. 521. Due to appellants' picketing in front of their New York Weather Bureau Office, appellees withdrew appellants' bargaining rights and abrogated an agreement under which the appellees would check off NAGE dues from the employees in the local unit. These sanctions are to end on June 30, 1969, when appellants can reapply for bargaining recognition and the dues checkoff.

The facts are generally undisputed.[1] On March 1, 1968, after efforts to estab-

---

1. This account of the factual background was stated by the Administrator of the

Environmental Science Services Administration in a letter to appellants on April

lish a new agreement had reached an impasse, at least 22 members of the New York local participated in a demonstration between the hours of 6 a. m. and 10 a. m. at the building at 30 Rockefeller Plaza, New York City, in which the Weather Bureau's office is located. Some members walked back and forth displaying placards voicing labor grievances ("Weather Bureau unfair," "employment not servitude," "stop unfair labor practices"). Leaflets were also distributed to passersby. The employees marched on their own time and the leaflets specifically stated that the employees were not on strike. The leaflets urged the passage of two congressional bills which would provide legislative recognition to federal employee unions and requested the public to write their Congressmen in order to protest the alleged injustices and inefficiencies at the Weather Bureau.

In a letter of April 29, 1968 from the appellee Administrator of the Environmental Science Services Administration, Robert M. White, appellants were informed that their demonstration constituted "picketing" which was related to a labor dispute with the Administration. As such, it was suggested that this behavior would violate a provision of the Code of Fair Labor Practices which had been promulgated by the President to implement Executive Order 10988.[2] Section 3.2(b) (4) of that Code prohibits employee organizations from

> Calling or engaging in any strike, work stoppage, slowdown, or related picketing engaged in as a substitute for any such strike, work stoppage or

slowdown, against the Government of the United States.

3 C.F.R., 1959–63 Comp., pp. 848, 853.[3] After suggesting that appellants' behavior could constitute a violation of this regulation, Administrator White, acting pursuant to his remedial powers under the Code,[4] proposed that the union's bargaining status be withdrawn and the bargaining agreement terminated. He then offered appellants an opportunity to submit a written statement to show why these proposed actions should not be taken. They were also permitted to request an "oral presentation" before a hearing officer to be appointed by the Administrator. After such a hearing, the examiner would then submit findings of fact to Administrator White.

Appellants promptly rejected the offer for a proposed hearing, stating that they considered the Administrator's contemplated actions to be unlawful and that the hearings would be beyond the scope of his authority. Treating this response as a waiver of the hearing, the Administrator then directed a letter to appellants, in which he made several findings of fact and law. He found the appellants' behavior to have constituted "picketing" in violation of the Code of Fair Labor Practices. He interpreted section 3.2(b) (4) as prohibiting picketing which was related to any current labor dispute, and not just a "strike, work stoppage, or slowdown." He then withdrew appellants' bargaining privileges and terminated the bargaining agreement. The Administrator noted that his action was a final administrative decision in that no further appeal was pro-

---

29, 1968. This version has been accepted as correct by the appellants at the oral hearing before this court.

2. The executive order was issued by President Kennedy in January 1962. By establishing a basis for recognized governmental employee organizations, it was "intended to provide a framework for the collective expression by federal employees of their views about the terms and conditions of their employment." Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App. D.C. 321, 322, 350 F.2d 451, 452 (1965),

cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966).

3. This quoted provision has also been issued by the Department of Commerce in section 5.01–2 of its Administrative Order 202–711, November 19, 1963. The same provision was also incorporated into the employment agreement between the two parties.

4. Section 3.3(c) of the Code of Fair Labor Practices, 3 C.F.R., 1959–63 Comp., pp. 848, 854.

vided within the Department of Commerce.

We agree with the parties that the appeal is appropriate for summary disposition on motion without the routine briefing schedule: (a) This may avoid mootness.[5] (b) The pleadings indicate that the jurisdictional issues have been sufficiently aired and are susceptible of immediate resolution.[6]

Appellants have set before the district court several specific claims. First, they say the employees' behavior was not the conduct proscribed by the Code of Fair Labor Practices and hence Administrator White was without power to take punitive action against the association. Second, whether or not the Administrator was empowered to act so far as the Code is concerned, his actions are challenged as unconstitutional because they unduly interfered with appellants' rights to assemble, freely speak, and petition Congress. Third, a denial of due process is claimed on the ground that the Code's ban on "related picketing" is overly vague and the employees were not fairly on notice that they were being prohibited from communication through picketing even when not tied to a strike.

■ The district court dismissed the action on a finding of "lack of jurisdiction." However, it seems clear to us that federal subject-matter jurisdiction exists in this case. *See* Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.

2d 663 (1962). Appellants have stated a claim arising under the Constitution in regard to the violation both of the first amendment and the due process clause. There exists the disagreement requisite for a "case or controversy." Finally, Congress has explicitly given the district court power to consider cases in the nature of mandamus against federal officials. 28 U.S.C. § 1361 (1964). Thus, there is subject-matter jurisdiction in the strict sense.[7]

We see no sound basis in this case for a court to decline to accept its judicial jurisdiction, if that is what the district court had in mind.[8]

Appellees rely primarily on Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451 (1965), cert. denied, 382 U.S. 978, 86 S. Ct. 548, 15 L.Ed.2d 469 (1966). In that case, where review was denied of a Cabinet officer's construction of Executive Order 10988, the opinion expressly pointed out that there was no claim of denial of constitutional rights. The court specifically noted that the general rule of sovereign immunity was subject to exceptions where actions taken by officers are ultra vires their powers, and where "even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void."[9] Since the doctrine declaring these exceptions is clear,[10] the present action does not

---

5. *See* Melson v. Sard, 131 U.S.App.D.C. 102, 402 F.2d 653 (1968) ; Citizens Ass'n of Georgetown v. Simonson, 131 U.S.App. D.C. 152, 403 F.2d 175 (1968), cert. denied, 395 U.S. 975, 89 S.Ct. 1454, 22 L.Ed.2d 755 (1969).

6. *Compare* Newell v. Ignatius, 132 U.S. App.D.C. 252, 407 F.2d 715 (1969).

7. *Compare* Powell v. McCormack, 129 U.S. App.D.C. 354, 395 F.2d 577, cert. granted, 393 U.S. 949, 89 S.Ct. 371, 21 L.Ed.2d 361 (1968).

8. The district judge made the following statement at the hearing on the motion to dismiss:

  I am further of the opinion that this is not a proper case for this Court to

intervene. I think this is a matter of executive policy as set forth in the Executive Order and that the remedies, if any, are to be put before the Executive Department. I do not think this is a proper case for this Court to intervene.

  So, I will grant the motion to dismiss for lack of jurisdiction.

9. 121 U.S.App.D.C. 321, 324 n. 4, 350 F.2d 451, 454 n. 4 (1965), cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966).

10. In addition to the precedents cited in Manhattan-Bronx Postal Union v. Gronouski, *supra*, see Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 836–837, 6 L.Ed. 204 (1824) ; Larson v. Domestic & Foreign Commerce Corp., 337

founder on any rock of sovereign immunity.

Somewhat intertwined with the basic considerations which underlie the sovereign immunity doctrine is the doctrine of nonjusticiability. Courts have refrained from the exercise of judicial power in situations where that might overly infringe on the prerogatives of another branch of government.[11]

■ We recognize that the federal government employee's right to organize is set forth in Executive Order 10988, and that implementation of this directive is essentially a matter of executive determination. But even where a privilege that has been extended is capable of unilateral revocation, the administration of that privilege cannot be exercised in a manner which clashes with basic constitutional safeguards.[12] Judicial relief is available even when the privilege is not rooted in a statute.[13]

■ Appellants' refusal to participate in the evidentiary hearing may have been mistaken: Whether or not it was legally required, for all they knew it might have led to an earlier grant of relief by the Administrator. However

this case is not one that properly calls for dismissal for failure to exhaust administrative remedies. The hearing was to be set up as a fact-finding device in which the hearing officer was only to report his findings of fact to the Administrator, who would then apply the relevant provisions of the Code. But appellants do not dispute the accuracy of the Administrator's factual account of the events in question.[14] Appellants' claim has been given full consideration by the Administrator. No offer was made of an opportunity for oral presentation to the Administrator. Appellants were permitted to file only a written statement, and their response to the Administrator has served the purpose of enabling him to consider the issues raised.[15] The Administrator's action is final, without further administrative remedies available.

Because the lower court has yet to reach the merits of appellants' claim, we do not consider them. The order dismissing appellants' action is reversed and the case is remanded with directions to proceed in accordance with this opinion.[16]

So ordered.

U.S. 682, 689–691, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). *See generally* 3 K. C. Davis, Administrative Law § 27.03 (1958).

11. *See* Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691; 7 L.Ed.2d 663 (1962).

12. *See, e. g.,* Gonzalez v. Freeman, 118 U.S. App.D.C. 180, 184–185, 334 F.2d 570, 574–575 (1964).

13. *See* Peters v. Hobby, 349 U.S. 331, 345, 75 S.Ct. 790, 99 L.Ed. 1129 (1955).

14. *Cf.* Sohm v. Fowler, 124 U.S.App.D.C. 382, 385, 365 F.2d 915, 918 (1966).

15. Because sufficient administrative remedies were exercised in this case, we need not inquire into whether appellants might have fully avoided administrative channels on the ground that the Administrator lacked authority to conduct an inquiry. *Cf.* Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919) ; Allen v. Grand Central Aircraft Co., 347 U.S. 535, 540, 74 S.Ct. 745, 98 L.Ed. 933 (1954) ; 3 K. C. Davis, Admin-

istrative Law §§ 20.01–.03 (1958) ; Jaffe, The Exhaustion of Administrative Remedies, 12 Buffalo L.Rev. 327 (1963).

Because appellants' case was processed by the Administrator, who was given an opportunity to reach a final decision, this cannot be said to be an instance in which the parties have merely exhausted their remedies by default. *Compare* Olinger v. Partridge, 196 F.2d 986 (9th Cir. 1952) ; Curtis v. Schaffer, 137 F.Supp. 683 (S.D.N.Y.1955).

This result is further compelled by the fact that the nonfactual issues left for the Administrator's determination were not of such a nature as to require extraordinary judicial deference to his administrative expertise. *See, e. g.,* Great Northern Ry. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922).

16. Insofar as the motion requests this court to issue a writ of mandamus, it is denied.