Virginia STEVENS, Plaintiff-Appellant,

v.

Rayfield CAREY et al., Defendants-Appellees.

No. 72-1871.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1973.

Decided Aug. 8, 1973.

Irving L. Fink, Ronald E. Elberger, Ind. Civil Liberties Union, Indianapolis, Ind., for plaintiff-appellant.

Ross P. Walker, Indianapolis, Ind., for appellee.

Before PELL and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

This appeal presents the important and novel issue of whether a federal district court had subject matter jurisdiction over an action by a federal employee against the federally-recognized union that allegedly expelled her from membership. The district court conclud-

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

**189**

ed there was no such jurisdiction and dismissed the action.

I.

Plaintiff Virginia Stevens is a classified civil service employee at Fort Benjamin Harrison, Indianapolis, Indiana. Her employer is the Department of Defense. The defendant Smith was sued individually. He also, along with three other named defendants, was sued as a member and representative of the American Federation of Government Employees (AFL–CIO) and Lodge No. 1411 of said Federation. The union was alleged to be the sole bargaining agent for employees of plaintiff's classification at Fort Harrison. In her complaint, Mrs. Stevens alleged that the defendants had deprived her of her right to participate in union affairs by excluding her from union membership and from the Local's Executive Committee; that they had denied her due process in disciplinary proceedings; and that the union had failed to maintain fiscal integrity. These actions supposedly violated 29 U.S.C. § 411(a)(2), Executive Order 10988 of January 17, 1962 [3 C.F.R. E.O. 10988 (1959–1963 Comp.)], and the Executive Memorandum of May 21, 1963 [3 C.F.R. at 848 (1959–1963 Comp.)].[1] Plaintiff further alleged that the union had expelled her in retaliation for her exercise of her First Amendment right to freedom of expression and that the procedures the union had followed in accomplishing this expulsion had denied plaintiff her Fifth Amendment right to due process. Mrs. Stevens sought $100,000 as damages and "all other proper relief," including presumably reinstatement in the union.

Plaintiff originally had claimed jurisdiction under section 412 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq. (Landrum-Griffin Act). However,

[1]. Executive Order 10988 and the May 21, 1963, Memorandum were revoked and replaced by Executive Order 11491 of October 29, 1969, 3 C.F.R. E.O. 11491 (1966–1970 Comp.).

plaintiff subsequently conceded to the district court and acknowledges on this appeal that section 412 does not confer jurisdiction over her action. Section 402(e) of the Act, which defines "employer," expressly excludes the United States; consequently, jurisdiction over actions by employees of the federal government against their unions does not lie under section 412.

After failing to secure jurisdiction under the Act, plaintiff invoked 28 U.S.C. § 1331, which provides in pertinent part: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy . . . arises under the Constitution, laws, or treaties of the United States." The parties and the court then agreed that the court would decide whether section 1331 was applicable and that if the court determined that the provision conferred jurisdiction, plaintiff would immediately be reinstated as a union member. It was further stipulated that if the court found it had jurisdiction and that Mrs. Stevens might be entitled to damages, a trial would be held on the issue of damages only, provided the parties failed to reach agreement by negotiation.

However, as we stated above, the district court concluded that it did not have subject matter jurisdiction. Therefore, the other issues did not have to be resolved, and the action was dismissed.

## II.

On this appeal, plaintiff offers two arguments to support the applicability of 28 U.S.C. § 1331(a): (1) Executive Orders, like congressional enactments, have the force and effect of "laws . . . of the United States"; and (2) because the plaintiff's action involves matters "peculiarly federal in nature," a federal court would be justified in fashioning appropriate governing principles for a federal cause of action.

■ For her first argument, plaintiff relies on Executive Order 10988, issued by President Kennedy on January 17, 1962. At the time of the passage of the Landrum-Griffin Act, federal employees had no rights of collective bargaining, and E.O. 10988 was designed to remedy this situation. Pursuant to this Executive Order, the President later issued a memorandum which recognized that federal employees needed protection of their democratic rights within their unions and which required that those unions maintain democratic procedures and practices.

The plaintiff contends that *all* Executive Orders confer jurisdiction under 28 U.S.C. § 1331 and that her action therefore should not have been dismissed on the jurisdictional ground. She cites several cases which purportedly state that controversies involving Executive Orders arise "under the laws of the United States," see, *e. g.*, Farkas v. Texas Instrument, Inc., 375 F.2d 629 (5th Cir. 1967), cert. denied, 389 U.S. 977, 88 S. Ct. 480, 19 L.Ed.2d 471, and Braden v. University of Pittsburgh, 343 F.Supp. 836 (W.D.Pa.1972). However, an analysis of the cases cited reflects the rationale that the Executive Orders involved were issued pursuant to statutory authority providing for presidential implementation and thereby have the force and effect of law. See also Farmer v. Philadelphia Electric Co., 329 F.2d 3, 4–8 (3d Cir. 1964). As we will note hereinafter, that rationale is not applicable in the case of the Executive Order here involved, even though the Order was not beyond the presidential power.

Even if statutory law-giving power were not involved in the cases upon which the plaintiff relies, it is to be noted they provide scant support for her position. The complaints involved in those cases were dismissed on the basis that no cause of action was stated as the Orders did not contemplate a private civil action as a permissible method of enforcing the Orders. See, *e. g.*, *Farkas, supra,* 375 F.2d at 632–633.

Executive Order 10988, in any event, "was a project of the Executive, and not of the Congress. . . . The

President . . . was under no obligation to issue the Order; and his action in doing so was simply in furtherance of a personal policy of trying to enhance the attractiveness and efficiency of federal employment. . . . The President did not undertake to create any role for the judiciary in the implementation of this policy. The question of his power to do so aside, he was, at least in this matter of determining representational rights, emulating the example of Congress, which has shown a marked disinclination to intrude equity courts into this process." Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451, 452, 456 (1965), cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966) (footnote omitted).

As the district court in the present case correctly noted, the presidential pronouncements were limited in scope:

"In sum, the Order did not expressly or by implication attempt to provide for judicial resolution of internal disputes arising out of governmental employee unions. Instead, as is made clear by the subsequent Memorandum, resolution of disputes was primarily to be accomplished by the most informal methods, only supplemented by the procedures outlined in the Memorandum. Compliance of the union with the rights of individual union members was to be enforced by the threat of withdrawal of recognition, if in the agency's discretion that became necessary."

Thus, the very documents that granted plaintiff her union rights, irrespective of their status as "laws of the United States," did not suggest that union members might vindicate those rights by private suits in the federal courts. To the contrary, they contemplated an administrative remedy, withdrawal of recognition.

Plaintiff's second argument has much appeal. A federal court would seem to be the appropriate forum for the vindication of a federal employee's claims against a union which the federal government has designated as exclusive bargaining agent. Despite its surface allure, the argument must fail. Congress has not granted the federal courts jurisdiction over such matters, and we have no authority to fashion our own subject matter jurisdiction here. In all the cases upon which plaintiff relies— Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L. Ed. 838 (1943); and National Ass'n of Gov't Employees v. White, 135 U.S.App. D.C. 290, 418 F.2d 1126, 1129 (1969)— subject matter jurisdiction was clearly otherwise present.

Executive Order 10988 did not contemplate a judicial remedy. The Landrum-Griffin Act expressly excludes the United States as an "employer" for purposes of the Act. Under these circumstances, plaintiff may not redress her grievances in the federal courts. It is for Congress, not the judiciary, to rectify what plaintiff charges is an "anomalous" situation.

Affirmed.