**Haywood J. BULLOCK et al., Appellants,**

**v.**

**L. Quincy MUMFORD, Individually and as the Librarian of Congress, et al., Appellees.**

**No. 71–2058.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1974.

Decided Oct. 21, 1974.

Rehearing Denied Nov. 15, 1974.

Rehearing and Rehearing En Banc Denied Jan. 8, 1975.

Michael D. Hausfeld, Washington, D. C., with whom Jerry S. Cohen and Herbert E. Milstein, Washington, D. C., were on the brief, for appellants.

Anthony J. Steinmeyer, Atty., Dept. of Justice, with whom L. Patrick Gray, III, Asst. Atty. Gen. at the time the brief was filed, Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, and Morton Hollander, Atty., Dept. of Justice, were on the brief for appellees.

Before LEVENTHAL and ROBB, Circuit Judges, and NICHOLS,* Judge, United States Court of Claims.

NICHOLS, Judge:

The appellants are former "deck attendants" once employed by the Library of Congress, Washington, D. C., and separated from such employment after protest demonstrations by them and others in the Library reading rooms, during their working hours, continuing over several days, and refusal by them to return to duty when warned to do so. They sued in the United States District Court, seeking reinstatement and damages. Defendants are the Librarian of

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

Congress and certain of his subordinates. The trial court, after consideration of affidavits by both sides, denied a preliminary injunction. It found that plaintiffs' behavior had been disruptive and their work stoppage unlawful. This court affirmed in unreported orders. The trial court then dismissed the complaint by order, without further proceedings, determining that it lacked jurisdiction in that certain plaintiffs had failed to exhaust administrative remedies available to them, and also that plaintiffs generally had failed to state a claim upon which relief could be granted. We affirm on the latter ground.

Jurisdictional issues and that of consent to be sued are not raised and could not be in light of National Association of Government Employees v. White, 135 U.S.App.D.C. 290, 418 F.2d 1126 (1969).

Plaintiffs, who were black, had long believed that they were victims of racial discrimination. They were dissatisfied with the Library's progress in correcting their problem. Just what they did is disputed in the affidavits. In view of the ultimate disposition below, we discard the findings on the preliminary injunction and assume for our purposes the truth of the version most favorable to appellants, *i. e.,* appellants' own. According to their complaint, they

> * * * attempted to make known their grievances by staging a sit-in in the Library's main reading room. On June 23 and June 24 [1971], plaintiffs sat and stood in the main reading room quietly, "as monuments of protest" * * *

They were summarily suspended on June 24, until June 28, and then summarily separated.

The affidavit of the name plaintiff, Mr. Bullock, supplies added details. It is clear from it the demonstration was on working time and that the demonstrators were repeatedly told to return to work or be "put on AWOL". There is no suggestion the authorities at any time condoned their behavior. Near the end of the 24th a body of policemen read an ordinance and gave them ten minutes to vacate, however, the plaintiff group remained in their places until quitting time. The demonstration resumed on the 25th despite the suspension. They resumed the same actions on Monday, the 28th, and received their separation notices that day, except for four non-plaintiffs who went back to work.

That the demonstration was not always silent is clear from Mr. Bullock. On the 23rd they had a shouting altercation with Library of Congress Guards. On the 24th, in another reading room (the main one apparently being closed) they were addressed by the administrative assistants of three Congressmen. That same day one of their female members was arrested for carrying a sign (cf. 2 U.S.C. § 167b), "the crowd became angry and pushing developed. It quickly subsided."

The official reasons for the separations stressed disruptive behavior and an unlawful work stoppage.

The case is unusual in that the plaintiffs' counsel concedes, indeed, avows, that the Library, which is part of the Legislative branch, is governed by no relevant statute or regulation. It has adopted certain regulations on grievance procedures and adverse actions, but these he puts aside as not relevant except as to an omission therefrom. He relies entirely on asserted breaches of the First and Fifth Amendments to the United States Constitution and if he ever had a foundation for claiming the firings were illegal, otherwise based, he has waived it now.

 The due process argument (Fifth Amendment) relies on Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), to show that the firing procedure was constitutionally defective in not providing for a hearing in advance of separation. This argument could be urged with considerable force when the briefs were written, but Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), knocks it in

the head. Taking all the opinions in that case together, we conclude that a procedure to separate Government employees could possibly be constitutionally defective on a number of grounds, but absence of a hearing in advance of separation for cause is not such a defect standing alone, in and of itself. The Library has *sua sponte* adopted regulations on grievances and appeals and on disciplinary actions, including separation. No doubt they bind the Library so that a failure to follow them would make a separation unlawful. Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L Ed.2d 1403 (1957). One plaintiff, Miss Williams, has obtained a hearing under this procedure. The Appeal Board report is largely favorable to her, criticizing Library measures and urging more lenient treatment of her. The Librarian, though rejecting some of the criticisms, is willing to consider re-employing her. Plaintiff Mr. John A. Ross has also had an Appeal Board proceeding with results favorable to him. Other plaintiffs have not followed the same route. Several plaintiffs, who were temporary employees, have no appeal rights. We are not required to scrutinize the procedures to search for due process defects in the regulations, or failures to follow them, not specifically pointed out.

■ The other contention appellants urge is that the Library has, by firing them, chilled their First Amendment freedom of speech and association. Their difficulty is in the first place that the Amendment does not protect behavior made unlawful by legitimate legislation or regulation, enacted for purposes unrelated to the suppression of free expression. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). The Library said from the outset, and still says, the demonstration was a strike such as is outlawed for all Government employees by 5 U.S.C. § 7311(3). In United Federation of Postal Clerks v. Blount, 325 F.Supp. 879 (3 judge court, Dist.Ct.D.C.), aff'd, 404 U.

S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971), this legislation was held not to infringe on First Amendment freedoms of United States Government employees. On oral argument appellants urged without much conviction and for the first time that this statute did not apply to Congressional employees. There is no reason suggested why Congress should regard a strike by its own employees as more tolerable than one in the Executive branch. Congress, too, is part of Government. (Further, 5 U.S.C. § 2101(1) includes Library of Congress employees within "civil service" for purposes of Title 5, U.S.Code. By § 2105(a) a Congressional aide is an "employee".) The reasoning of the panel majority was that the right to strike did not exist at common law and had to be granted by statute to exist, and hence it could not be a constitutional right. This reasoning would be dispositive of the instant case apart from the statute; however, we note that Circuit Judge Skelly Wright, sitting as a member of the panel, did not join in it. He agreed, however, that Congress could prohibit Government employees from striking.

■ In the second place, the Library, as already noted, considered that the behavior of the plaintiffs was "disruptive". The court below so found on the application for a preliminary injunction, but with the support of affidavits from management sources we do not here consider. However, on consideration of the complaint and appellants' affidavits alone, we think it would have required a powerful imagination indeed, to suppose, antecedently, that it would be possible to stage a sit-down strike in the main reading room of a public library, without disrupting the study and meditation intended to be the principal activity carried on in such places. If such an idea was ever entertained, the events described in the Bullock affidavit should have produced speedy disillusionment. If management reasonably believed the appellants' acts were disruptive, it had a right to order them to vacate the main reading room, and penalize them for re-

fusing to do so, notwithstanding the First Amendment.

We think the extent of First Amendment freedoms in a library environment is closely analogous to their exercise in a school. In Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) the Supreme Court held that wearing of black armbands in school to protest the Vietnam war was protected freedom of speech, but on the assumption that no disruption of educational activities was involved. Mr. Justice Fortas neatly drives the distinction home at p. 505, 89 S.Ct. 733, by approving reference to companion cases in the Fifth Circuit, Burnside v. Byars, 363 F.2d 744 (1966), and Blackwell v. Issaquena County Board of Education, 363 F.2d 749 (1966), both decided by the same panel the same day. On First Amendment grounds, in the absence of disruption, it enjoined a school board from prohibiting the wearing of SNCC buttons, but permitted such a prohibition by another board where disruption was shown. See discussion of these cases in Butts v. Dallas Independent School District, 436 F.2d 728 (5th Cir. 1971).

Thus the dismissal of the complaint is sustained without reaching the issue of exhaustion of remedies. This is more complex than the substantive issues because there were three classes of employees: temporary employees expressly denied the right to appeal their dismissal under the relevant Library regulations, tenured employees who had such a right and did not exercise it, and Mr. Ross and Miss Williams who did appeal, as above stated. The existence of the temporary category would preclude a complete disposition of the case on the exhaustion ground alone.

■ The plaintiffs also endeavored to show that they were victims of racial discrimination in various conditions of their employment prior to the demonstration. We think that, however valid the charge may be, it does not excuse illegal and disruptive behavior. In 1971 neither the courts, Congress, nor the Executive branch were indifferent to the legitimate discrimination complaints of black employees. The Library grievance appeals procedure was expressly declared to be available for complaints as to discrimination with respect to "race, color, religion * * *" etc. Though they voiced many informal complaints to their supervisor, the appellants do not seem to have made any use of this procedure. On the contrary, during the sit-down, the Library's Fair Employment Officers themselves came forward, *sua sponte*, to try to get the appellants to return to lawful courses, and to no avail, according to Mr. Bullock. The ill advised self-help procedure the appellants resorted to puts them out of court with their present case. One reason for having an orderly forum for discrimination complaints is of course to remove any necessity for disruptive demonstrations.

Affirmed.

On Appellants' Petition for Rehearing and/or Suggestion for Rehearing En Banc

PER CURIAM:

■ Appellants have filed a petition for rehearing, alleging new grounds for reversal, not previously placed before this court. We pointed out in the opinion that with respect to the Fifth Amendment, appellant employees argued simply and solely that due process required a hearing in advance of their separation. Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), came down after the briefing was completed, but on subsequent oral argument appellants did not expand or refine their reasoning to avoid its impact. We said:

> We are not required to scrutinize the procedures to search for due process defects in the regulations, or failures to follow them, not specifically pointed out.

Assertion of due process defects not dealt with in the opinion now comes too late, does not require our present consideration, and still less did it require anticipatory consideration in the opinion as filed. The precedential effect of the decision will be thus restricted. It

is in no way to be taken as holding that the Library of Congress termination and post-termination adverse action and grievance procedures have been examined and are in all respects proof against due process attack.

The petition for rehearing is denied.

Statement of BAZELON, Chief Judge, as to why he voted to deny rehearing *en banc*:

I vote to deny rehearing *en banc* because I think the separation procedures as challenged in this action should be sustained under the reasoning of Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The non-probationary employees were given a hearing after their termination and there is apparently no serious challenge to these hearing procedures with one exception to be discussed in a moment. The clear import of *Arnett* and the recent case of Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) is that there is no right to pre-termination constitutional protection. I think this principle is a more than significant erosion of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and, indeed, of Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), but I feel these quite recent Supreme Court opinions leave no alternative. The probationers have no procedural due process rights at all except to the extent any are created by the agency's own regulations.[1] Despite these views, I am baffled by the statement that *Arnett* "knocks [Bullock's argument] in the head." The concurring opinion of Justice Powell in which Justice Blackmun joined clearly indicates that procedural claims by federal employees do have constitutional overtones which must be balanced against a government interest in efficiency.[2] I think the panel opinion could be more sensi-

tive to the dictates of this balancing task but do not think the holding forecloses further inquiry and balancing in later cases with different factual situations.

The one procedural objection raised by appellants which requires some comment is the claim that the Library of Congress post-termination hearing procedure was constitutionally defective and that, therefore, a pretermination hearing is required. The constitutional defect alleged is that the Librarian is not an impartial decision-maker, since he both participated in the original decision to summarily separate appellants and is the final authority in the post-termination hearing process. I have no doubt that a constitutionally acceptable hearing process must include an impartial decision-maker. *Cf.* Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). But appellants' argument is slightly different: they state that the lack of impartiality, so it is alleged, of the Librarian not only renders the post-termination hearing defective but therefore renders defective the failure to provide a pre-termination hearing. Without particular allegations of bias[3] and in light of the proprietary nature of the Library of Congress, I am unwilling to accept this argument as a sufficient distinction of the constitutional balance struck by Justice Powell and Justice Blackmun in *Arnett* since *Arnett* itself involved a claim that the decision-maker was not impartial. The constitutionality of the Library's post-termination hearing procedures must be considered on their own ground and that consideration cannot be effected until the post-termination proceedings are complete, which they are not. The panel opinion does not, by my reading, intimate any opinion on the merits of a possible claim that the post-termination hearing procedures are

---

1. *See* Ring v. Schlesinger, No. 72–1568, 164 U.S.App.D.C. 19, at 22–27, 502 F.2d 479, at 482–487 (1974).

2. *Compare* Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

3. *Cf.* the analysis of Judge Tamm's seminal opinion in Cinderella Career & Finishing Schools, Inc. v. FTC, 138 U.S.App.D.C. 152, 425 F.2d 583, 589–592 (1970).

inconsistent with the due process clause of the Fifth Amendment.

As to the First Amendment claims of both the probationers and the tenured employees, I think that their actions were conduct properly proscribed and therefore their dismissal is consistent with the First Amendment.[4] However, I am concerned with the panel's rather sweeping language which purports to find, on the basis of affidavits alone, with no fact-finding process, that the appellant's activity was both constitutionally disruptive in terms of symbolic speech precedent and also a strike within the meaning of 5 U.S.C. § 7311(3) (1970). Recent cases in this Court dealing with First Amendment activity by federal employees have evidenced a concern that any adjudication be based on a complete record so that governmental and individual interests may be properly balanced.[5] I think this precedent should create a similar sensitivity in "speech plus" cases such as the case before us here. I do not think the panel opinion here forecloses this approach. The facts of this case prevent it from being a precedent on disruptive symbolic speech.

4. *See* Waters v. Peterson, 161 U.S.App.D.C. 265, 495 F.2d 91 (1973).

5. *See* Tygrett v. Washington, No. 72–1876 (D.C.Cir. Oct. 23, 1974); Ring v. Schlesinger, No. 72–1568, 164 U.S.App.D.C. 19, 502 F.2d 479 (1974); Waters v. Peterson, 161 U.S.App.D.C. 265, 495 F.2d 91 (1973).