**UNITED STEELWORKERS OF AMERICA, AFL–CIO, an Unincorporated Association, et al., Plaintiffs,**

v.

**UNIVERSITY OF ALABAMA IN BIRMINGHAM et al., Defendants.**

Civ. A. No. 76–G–0543–S.

United States District Court,
N. D. Alabama, S. D.

March 30, 1977.

George C. Longshore, Jerome A. Cooper, Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiffs.

John J. Coleman, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for defendants.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

This is a civil action for "injunctive relief, damages, a declaratory judgment, and other appropriate relief", brought under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and predicated upon alleged violations by the defendants Volker and Skaggs[1] (hereinafter sometimes referred to collectively as the defendants) of the First, Fifth and Fourteenth Amendments to the United States Constitution. The gravamen of the complaint concerns the discharge by the

---

1. By order dated June 3, 1976, the defendants The University of Alabama in Birmingham and the Board of Trustees of The University of Alabama in Birmingham were dismissed as parties to the action. See, e. g. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Adkins v. Duval County School Bd.*, 511 F.2d 690 (5th Cir. 1975); *Skehan v. Board of Trustees*, 501 F.2d 31, 44 (3rd Cir. 1974) *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

defendants of the individual plaintiffs (other than Union District Director Howard Strevel) [2] "without the benefit of notice and a hearing" in alleged violation of their rights of due process, equal protection, free speech and freedom of association.[3]

All of the individual plaintiffs were terminated from their employment with The University of Alabama in Birmingham (UAB) while on a Union sponsored strike against UAB which began on March 31, 1976, and ended on or about April 7, 1976. There are two categories of terminations: (i) individual plaintiffs who were terminated by UAB as a result of strike misconduct occurring at various stages of the strike; and (ii) individual plaintiffs who were terminated by UAB because of their failure to return to work from the strike for more than five consecutive days.

On April 19, 1976, a hearing was held on plaintiffs' application for preliminary relief; at the conclusion of the evidence, the Court denied that application but retained jurisdiction pending the exhaustion by the individual plaintiffs of the internal grievance procedures provided administratively by UAB for review of non-academic employee disciplinary actions. Subsequently, defendants Volker and Skaggs filed motions for summary judgment with supporting affidavits to which counter-affidavits were filed by plaintiffs. The Court has had the benefit of extensive briefs and oral argument. On Thursday, March 10, 1977, the Court

was apprised by the parties that the grievances of all of the individual plaintiffs have been processed through the UAB grievance procedures to final decision, as more fully set forth in the findings of fact. There are no disputes as to facts material to the legal issues presented.

The Court, having fully considered the pleadings, all of the testimony, exhibits and other evidence adduced in the course of this case, and having carefully reviewed the briefs, and having heard the oral arguments of counsel, now makes and finds the following facts and makes the following conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. This action, seeking injunctive relief, and damages, is predicated upon alleged violations by the defendants, under color of State law, of rights of the plaintiffs under the First, Fifth and Fourteenth Amendments to the Constitution of the United States.

2. Plaintiff Union is an unincorporated labor organization. Plaintiff Strevel is Director of District 36 of the Union. Strevel and each of the other individual plaintiffs are citizens and residents of the State of Alabama and the individual plaintiffs are members of the Union. The individual plaintiffs prior to their termination by UAB, as hereafter set forth, were hourly paid non-supervisory employees of UAB

2. For convenience the former employees of UAB who are parties plaintiff to this action are hereafter referred to as the "individual plaintiffs", the plaintiff Strevel as "Strevel", and the plaintiff United Steelworkers of America, AFL–CIO, as the "Union".

3. Plaintiffs also charged defendants with constitutional derelictions referable to a failure to bargain with plaintiff Union as agent for the individual plaintiffs and certain other non-academic employees of UAB. Alabama has no statute permitting or requiring publicly owned educational institutions to bargain collectively. The National Labor Relations Act which does impose bargaining obligations under certain conditions upon private industrial employers expressly excludes state agencies. 29 U.S.C. Section 152(2) There appear to be sound constitutional reasons for that exclusion. *Cf. Na-*

*tional League of Municipalities v. Usury,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). There is no claim that UAB has failed to meet with the Union and employees involved, upon request, and the record reflects at least four such meetings during the period preceding the strike. The legal efficacy of this failure to bargain claim has already been determined adversely to the Union by District Judge Hancock in a collateral proceeding brought by the Union entitled *"United Steelworkers of America, AFL-CIO, et al. v. University of Alabama in Birmingham, et al.,* Civil Action No. 75–H–1788–S", and such claim may not appropriately be renewed here. In any event, for the reasons above stated, plaintiffs' claim raises no substantive constitutional issues. *Beauboenf v. Delgado College,* 428 F.2d 470 (5th Cir. 1970).

employed in its Maintenance and Building Alterations Departments.

3. Defendant Volker between August, 1975 and June 16th, 1976 was President of UAB.[4] Defendant Skaggs was then and is now its Director of Personnel Services.

4. UAB is a public institution of higher education established by the State of Alabama as an instrumentality thereof.[5] UAB performs essential educational, medical and hospital services for the benefit of citizens of Alabama, and others, including but not limited to, the provision of educational opportunities and facilities for approximately 12,000 undergraduate and graduate students, a major hospital known as University Hospital and other hospitals, clinics, medical, medical research, and rehabilitation facilities, within a large complex located in the City of Birmingham.

5. On August 13, 1975, plaintiff Strevel wrote a letter to defendant Volker stating, in substance, that the Union represented a majority of the employees in the maintenance and building alterations departments of UAB and requesting a meeting with UAB officials "to establish an appropriate collective bargaining relationship."

6. On September 22, 1975, the Union and some of the named plaintiffs herein filed a lawsuit in this Court entitled "*United Steelworkers of America, AFL–CIO, et al. v. University of Alabama in Birmingham, et al.,* Civil Action No. 75–H–1788–S", seeking to require UAB, Volker and Skaggs, to bargain and enter into a collective bargaining agreement with the Union on behalf of the individual plaintiffs, and certain other UAB employees employed in the maintenance and building alterations departments. A copy of District Judge Hancock's Order in said lawsuit, issued on October 25, 1975, is attached hereto as Exhibit A. No appeal was taken by plaintiffs from Judge Hancock's Order.

7. Between October 25, 1975, and March 31, 1975, representatives of UAB met upon request with the Union and some of the individual plaintiffs, and received and discussed with them expressions, views and opinions of such employees relating to the terms and conditions of their employment. The record reflects that during this period of time there were four meetings. On February 23, 1976, representatives of UAB made specific oral responses to various suggestions and comments of the employees and the Union which responses were reiterated by letter to the employees dated February 27, 1976, signed by defendant Skaggs.

8. In early March 1976, the individual plaintiffs and certain other UAB employees employed in the maintenance and building and alterations departments met with James King, an official of the Union, and voted to call a strike against UAB for the purpose of obtaining recognition as bargaining agent and a collective bargaining agreement. The strike by the Union and the individual plaintiffs began on March 31, 1976 and ended on April 7, 1976.[6]

9. During the strike approximately 115 employees, employed in the maintenance and building alterations departments of UAB, including all of the individual plaintiffs, abandoned their jobs, went out on strike, and failed and refused to report to work as scheduled and assigned. In furtherance of the strike, pickets were set up at various UAB facilities, including University Hospital.

10. Because of the substantial number of maintenance employees on strike at the inception of the strike, the ability of UAB to maintain adequately equipment and facilities essential to the health, safety, and

---

**4.** The defendant Volker was President of The University of Alabama in Birmingham at all relevant times until June 16, 1976, when he became Chancellor of The University of Alabama, and Dr. George W. Campbell became Acting President.

**5.** See, *e. g., Hutchinson v. Board of Trustees of University of Alabama,* 288 Ala. 20, 256 So.2d 281 (1971); *Cox v. University of Alabama,* 161 Ala. 639, 49 So. 814 (1909).

**6.** The record reflects that for the most part the strike ended on April 6, 1976; however, approximately 17 strikers failed to return to work from the strike until after 8:00 a. m., April 7, 1976.

well-being of hospital patients and others was endangered.

11. All of the striking employees, including the individual plaintiffs, at the time of the strike were full-time permanent employees of UAB as defined in the UAB Non-Academic Personnel Handbook entitled 'You and UAB, revised May, 1975" (hereafter "Handbook"). Full-time permanent employees are defined at Section 3.6 of the Handbook as "individuals who have an indefinite appointment and are required to work regularly 40 hours a week. * * *"

12. UAB policies with respect to dismissal of permanent employees are set forth at 3.15 and 3.19 of the Handbook. According to Section 3.15 there are twelve stated grounds for immediate dismissal, including "unexcused absence for three (3) days without notification or reasonable cause"; all of said grounds are preceded, *inter alia,* by the following statement:

> "Just cause for dismissal is not limited to those violations that follow as there may be other offenses committed that warrant this action depending on a number of factors."

In addition, paragraph 3.19 of the Handbook contains, *inter alia,* the following statement:

> "From time to time . . . the University, just as any other large organization, has to make decisions without prior consultation with its employees. The University must, therefore, maintain exclusive discretion to exercise the customary functions of management including, but not limited to, the discretion to . . dismiss . . . and discipline employees; . . . to determine the size of and composition of the work force; to establish, change, and abolish policies, procedures, rules and regulations; and to assign duties to employees in accordance with the needs and requirements determined by the University."

13. On Friday, April 2, 1976, UAB dispatched a written notice in the form of a telegram to the home address of each striking employee. This telegram was sent to remind the striking employees that they were, at the time of the telegram, in the second day of unexcused absences from work.

14. Fourteen individual plaintiffs were terminated by UAB for strike misconduct. Thirteen of them elected to file grievances in protest of the termination actions pursuant to the grievance procedures established by 3.20 of the Handbook. Upon a review, prior to hearing, two of the termination actions were reversed at the second step of the grievance procedure by UAB official Jim Pegues and those individuals were reinstated to their jobs. The remaining cases were heard at the third step by three member panels selected in accordance with the third step procedures established in the Handbook (except as stated in finding of fact 17 hereof); in each instance the grievant involved, at his option, was represented by a Union official who participated in the examination and cross-examination of witnesses; in ten of these cases the third step panel recommended reinstatement of the grievant, and in one of them the hearing panel recommended that the UAB termination actions be upheld. UAB adopted and implemented the reinstatement recommendations of the third step hearing panel in each of these cases.

15. The remaining individual plaintiffs (and certain other UAB striking employees who are not parties to this action) were terminated by UAB because of their failure to return to work from the strike for over five (5) days. Such termination actions occurred in the context of progressive disciplinary actions meted out to all strikers by UAB because of their unexcused absences, as follows:

(i) Those University employees who were on strike one day but who returned for work on April 1, 1976, were placed on 60 days probation.

(ii) Those employees who were on strike two days but who returned for work on April 2, 1976, received 90 days probation.

(iii) Those employees who were on strike three days but who returned for

work on April 5, 1976, received 180 days probation and one day of suspension.

(iv) Those employees who were on strike four days but who returned for work on April 6, 1976, received 180 days of probation and two days of suspension.

(v) Those employees who were on strike five days but who returned for work before 8:00 a. m., April 7, 1976, received 180 days of probation and three days of suspension.

(vi) Those employees who were on strike in excess of five (5) days, *i. e.,* who did not report back for work prior to 8:00 a. m., April 7, 1976, were terminated.

16. Seventeen maintenance and building and alterations employees on strike failed to report back for work with UAB by 8:00 a. m., April 7, 1976, and were terminated; seven of them were individual plaintiffs in this action all of whom filed grievances in protest of their discharges pursuant to Section 3.20 of the Handbook. All of these grievances were processed to the third step where they were heard jointly before a third step panel, selected in accordance with the procedures established by Section 3.20 (except as noted in finding of fact 17 hereof); each of the grievants was represented in such hearing by an official of the Union, and by Union legal counsel who participated in the examination and cross-examination of witnesses; following the hearing the third step panel recommended (2–1) that the discharges of the grievants be upheld. That recommendation was adopted by UAB without change.

17. Defendant Skaggs, Director of Personnel Services, did not perform his appointed role in the third step of the grievance procedure with respect to these grievances, Mr. Skaggs having been involved in UAB's decisions concerning the termination of the individual plaintiffs. Instead, Dr. Volker, appointed Dr. James H. Woodward, Assistant to the Vice President for University College to perform the role of the Director of Personnel Services in the grievance procedure. Dr. Woodward did not participate in the investigation which led up

to termination of, or in the decisions to terminate, the individual plaintiffs.

18. The record reflects that for a period of some months prior to the strike, building alterations and maintenance employes who resigned or who were terminated for any reason were not replaced in their jobs because, in the judgment of UAB officials, both the building alterations department and the maintenance department were overstaffed. Prior to the strike a survey or study was made of manpower requirements in the UAB maintenance department by an independent concern at the request of UAB. A preliminary copy of the report, or results of that survey, entitled the "Daniel Report" was received by UAB during the strike. That report confirmed UAB's judgment that, at the inception of the strike, it was overstaffed in the maintenance department.

19. At the time of the termination of the individual plaintiffs, UAB had no economic need to fill the positions vacated by them, and UAB did not in fact thereafter fill their positions with other personnel.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this lawsuit and jurisdiction over the parties thereto under the Civil Rights Act of 1871, 42 U.S.C., Section 1983.

2. Employees of a public employer have no constitutional right to strike, and the termination of employees for participation in such a strike does not infringe upon their First Amendment rights of association and free speech, or operate to deny them equal protection of the law. *United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879 (D.D.C.) (Three Judge Court), aff'd, 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38; *Atkins v. City of Charlotte,* 296 F.Supp. 1068 (W.D.N.C.1969) (Three Judge Court) (dicta); Cf. *UAW v. Wisconsin Employment Relations Board,* 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1949); *Beauboenf v. Delgado College,* 428 F.2d 470, (5th Cir. 1970). Accordingly, while members of a union may associate as such and advocate union causes, they cannot, by striking, compel their public employer to recognize or bargain with the

union (*Beauboenf v. Delgado College, supra*) since such action goes "beyond the outer limits of their constitutional protections of free expression and association, and they are not constitutionally insulated from being fired or otherwise penalized for refraining and continuing to refrain from working." *Johnson v. City of Albany, Georgia,* D.C., 413 F.Supp. 782, at 797. See also, *United Postal Clerks v. Blount, supra; Bullock v. Mumford,* 166 U.S.App.D.C. 51, 509 F.2d 384 (1973), and *Bennett v. Gravelle,* 451 F.2d 1011 (4th Cir. 1971), *cert. dismissed,* 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972).

■ 3. The strike engaged in by the individual plaintiffs was in contravention of the public policy and law of the State of Alabama. *Nichols v. Bolding,* 291 Ala. 50, 277 So.2d 868 (1973).

■ 4. The Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property without due process of law." U.S.Const. Amend. XIV, Section 1. Procedural due process requirements are applicable only when there is a deprivation of one of the constitutionally enumerated rights, the rights of concern in this action being property and liberty. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ 5. Property interests receiving constitutional protection are not themselves created by the constitution, but are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law,—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents, supra; Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 46 L.Ed.2d 634.

■ 6. The individual plaintiffs, employed at hourly rates, under the terms and conditions set forth in the Handbook, and by definition, employed for "indefinite" periods of time (Section 3.6 Handbook) were, under established Alabama legal principles, terminable at will by UAB. *Ala-*

*bama Mills v. Smith,* 239 Ala. 296, 186 So. 699; *Great Atlantic & Pacific Tea Company v. Summers,* 25 Ala.App. 404, 148 So. 332, cert. den., 226 Ala. 536, 148 So. 333; *Harper v. Southern Coal & Coke Co.,* 73 F.2d 792 (5th Cir. 1934). Thus, under Alabama law, following their termination, the individual plaintiffs had no "legitimate claims of entitlement" to their jobs. *Cf. Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court concludes, accordingly, that the individual plaintiffs had no property interest in their jobs with UAB protected by the Fourteenth Amendment. *Bishop v. Wood, supra.*

■ 7. The termination by UAB of the individual plaintiffs leaves them as free as before to seek other employment. There is no indication of any public disclosure of the reasons for their discharge by UAB. The Court concludes, upon the facts, that plaintiffs have not been deprived of a liberty interest by virtue of their discharges for Fourteenth Amendment purposes. *Bishop v. Wood, supra.*

■ 8. Since the individual plaintiffs were deprived of no liberty interest and no property interest in their jobs, the Court concludes that plaintiffs were not entitled to notice and to a pretermination hearing.

■ 9. The Court further concludes that, in the context of the facts herein relating to the strike by individual plaintiffs against UAB, even if the individual plaintiffs had property interests in their jobs for purposes of procedural due process, UAB would not have been obligated to furnish to them a statement of the reason for their termination in advance thereof, or a pretermination hearing. See *Thurston v. Dekle,* 531 F.2d 1264 (5th Cir. 1976); *Burnley v. Thompson,* 524 F.2d 1233 (5th Cir. 1975).

■ 10. The Court further concludes that the procedures, afforded to the individual plaintiffs by UAB for review of their discharges, met minimum due process requirements applicable to employees who

have property interests in their jobs. *Hortonville Joint School District No. 1 v. Hortonville Educational Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). See Findings of Fact 13–17. The fact that thirteen individual plaintiffs of twenty who sought review of their terminations through the UAB grievance procedure were reinstated as a result of that procedure is persuasive evidence that the UAB grievance procedure is a meaningful and adequate one for the review of UAB employee terminations.

██ 11. The Court further concludes that UAB, not this Court, has the obligation and responsibility to make termination decisions with regard to employees who strike against it in derogation of their responsibilities to work. It is UAB and not this Court who can best answer "an important question of policy: what choice among the alternative responses to the [maintenance employees] strike will best serve the interests of [UAB], the interests of the [citizens and patients] who depend on [UAB], and the interests of the citizens whose taxes support it?" *Hortonville, supra,* at 493–495, 96 S.Ct. at 2315, 49 L.Ed.2d at 11. The Court concludes, that the due process clause of the Fourteenth Amendment, if applicable at all, to the case *sub judice,* does not "guarantee [plaintiffs] that the decision to terminate their employment would be made or reviewed by a body other than [UAB]." *Hortonville, supra,* at 496–497, 96 S.Ct. at 2316, 49 L.Ed.2d 12.

12. As previously noted (Conclusion of Law No. 2) the right of the individual plaintiffs to be members of a labor organization does not *ipso facto* confer upon them the right to engage in an illegal strike and resulting unexcused absences from their employment. The record reflects numerous instances of the exercise by the individual plaintiffs of their right of association with the Union, and of their right of free speech and, in this connection, that UAB representatives met upon request with the Union and some of the individual plaintiffs to receive employee communications on four occasions, but the record is devoid of evidence that any of the individual plaintiffs were disciplined in any way until they engaged in a strike against UAB, contrary to law and established UAB policies. The Court concludes that the termination of the individual plaintiffs in this case for strike misconduct in some instances, and for participation in the strike *for more than five days* in other instances, did not deprive the individual plaintiffs of equal protection or otherwise violate their constitutional rights.

## EXHIBIT A

UNITED STEELWORKERS OF AMERICA, AFL–CIO, an unincorporated association; Stephen L. Downy; Frederick Reasor; Cary Graves; Charles Harbison; Charles K. Atkins; James E. Hemby; and Howard Strevel, Director, District 36, United Steelworkers of America, AFL–CIO,

       United States District Court,
      N. D. Alabama, S. D.

       Oct. 24, 1975.

HANCOCK, District Judge.

This action seeks to secure to certain employees of the University of Alabama in Birmingham, a subdivision of the Board of Trustees of the University of Alabama, a body corporate, collective bargaining rights allegedly secured to them by the first and fourteenth amendments to the Constitution of the United States which they claim have been denied by one or more of the defendants, acting under color of state law and in violation of 42 U.S.C. Section 1983. The complaint seeks injunctive relief and a declaration of the rights of the plaintiffs, and the court has jurisdiction under 28 U.S.C. Sections 1343 and 2201.

The court concludes that the University of Alabama in Birmingham, as a subdivision of the Board of Trustees of the University of Alabama, a body corporate, and the Board of Trustees of the University of Alabama itself are not "persons" within the scope and meaning of Section 1983, and accordingly, said defendants are dismissed as parties to this action.

Recognizing that the grant of injunctive relief is a matter of serious import and that it could materially interfere with meaningful relationships between the parties and a settlement of the various matters which predicated the filing of this action, the plaintiffs have withdrawn their request for injunctive relief and this action has been submitted to the court for a declaration of the rights of the parties. The court has considered the complaint and the arguments of counsel for the parties, and hereinafter sets forth the declaration of the rights of the parties under the factual situation presented by the complaint.

It is ORDERED, ADJUDGED, DECREED and DECLARED as follows:

1. Employees [1] of the University of Alabama in Birmingham have the right to express their respective views and opinions on matters of concern to them. This right protects the expression of opinions, whether made by supervisory or nonsupervisory employees and whether made to superiors, subordinates or other employees of the University of Alabama in Birmingham and whether made to appropriate governmental bodies or to the public generally. This right of expression covers not only subjects of general public interest, but also matters relating to wages, hours and other conditions of employment, including one's support for (or opposition to) activities of, or membership in, any labor union or other similar organization. There is no obligation, however, on the part of the University of Alabama in Birmingham to withhold or deduct from the salary of any employee dues owing by such employee to a union even though requested to do so by the employee.

2. In the expression of views and opinions, the employees of the University of Alabama in Birmingham, whether acting singly, collectively, or unanimously, may communicate through any spokesman or representative, including but by no means limited to, the plaintiff union or their agents. While the University of Alabama in Birmingham must give any such expressions due consideration, there is no requirement that the University of Alabama in Birmingham (or any of its departments to which such communications may be addressed), accept such expressions or, where made through a spokesman or representative, recognize the spokesman or representative as an agent for collective bargaining, as that term is generally understood.

It is further ORDERED that each party is to bear their own costs.

---

1. As the declaration of rights is intended to cover all nonacademic employees of the University of Alabama in Birmingham, the court concludes that class action status pursuant to Rule 23 of the Federal Rules of Civil Procedure is not necessary.