Patrick J. WOODS, an employee of the New York State Department of Labor, Plaintiff,

v.

The STATE of New York, the Department of Labor of the State of New York, Philip Ross, Industrial Commissioner, State of New York, Victor Bahou, President of the Civil Service Commission, State of New York, the Civil Service Commission of the State of New York, Louis Sitkin, Appeal Board Chairman, Department of Labor, State of New York, Irving Trow, Chief Administrative Law Judge, Department of Labor, State of New York, David Weisenberg, Senior Administrative Law Judge, Department of Labor, State of New York, Irving Blachman, Senior Administrative Law Judge, Department of Labor, State of New York, Martin Rice, Senior Attorney, Department of Labor, State of New York, Jane Rubin, Manager of Local Office 518, Department of Labor, State of New York, Joshua Williams, Manager of Local Office 590, Department of Labor, State of New York, Baldazzaro Abbruzo, Director of Personnel, Department of Labor, State of New York, Antonio Murphy, Assistant Personnel Director, Department of Labor, State of New York, Nathan Vogel, Personnel Administrator, Department of Labor, State of New York, Defendants.

No. 78 Civil 1914.

United States District Court, S. D. New York.

April 11, 1979.

Patrick J. Woods, pro se.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants; Margaret A. Goederer, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Patrick Woods, an Unemployment Insurance Referee (now called "Administrative Law Judge"), commenced this action against the State of New York, the Department of Labor and Civil Service Commission of New York, and various state officials, charging that an unsatisfactory work performance rating issued to him for 1977 was the result of arbitrary and discriminatory conduct depriving him of constitutional rights under the Fourteenth Amendment. Causes of action are asserted under 42 U.S.C., sections 1981 and 1983, and the New York Constitution; the Court has jurisdiction over the former claims pursuant to 28 U.S.C., section 1343(3) and pendent jurisdiction over the latter. The defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure [1] or, in the alternative, that the Court abstain from taking jurisdiction.

### I

■ The affidavits and exhibits submitted to the Court establish the following

---

1. Defendants in support of their motion have filed a "statement" pursuant to Rule 9(g) of the General Rules of this Court. Plaintiff, however, has failed to submit a statement as to alleged genuine issues to be tried, as is required by the same Rule. Although plaintiff appears pro se, he is an attorney and is held to the same standards as other attorneys appearing before the Court.

facts:[2] Plaintiff was appointed as an Unemployment Referee from a civil service list and started working for the New York Department of Labor in December 1974. He participated with four attorneys appointed to the Appeal Board staff in a month-long training program arranged by Irving Trow, then an Associate Attorney for the Unemployment Insurance Appeal Board. The program consisted of attending lectures, listening to recorded training tapes, reading selected court and Appeal Board cases, and participating in discussions; plaintiff received procedural instruction from Senior Referees and sat in on hearings conducted by experienced Referees. This training was at least as comprehensive as the informal instruction normally afforded new Referees and was substantially similar to the more formal sessions set up for the large group of new Referees appointed in January 1977.[3]

After the initial training period, Woods functioned as a Referee—conducting hearings to determine whether claimants were entitled to unemployment benefits—without any unusual degree of supervision. The Department, however, received complaints from parties and co-workers regarding plaintiff's work performance. For example, in 1976 various persons in letters or written appeals from plaintiff's decisions complained of "the referee's bias against [parties or their representatives] and his abusive treatment of them," "the intimidating way in which Mr. Woods presided," and a tendency to go "far astray in the course of this hearing and  .  .  .  to show little or no regard for the professionalism and efficiency of the Employment Service and its personnel."[4] Not only was plaintiff's

conduct of hearings objected to by parties who appeared before him, but the quality of his opinions was called into question by his superiors. Trow, promoted to Chief Referee, wrote to Woods on October 25, 1976, criticizing three decisions for poor judgment, injudicious style and tone, and miscitation of authority: "The Chairman of the Appeal Board finds this work unsatisfactory and I concur in this judgment. Unless an improvement is shown in the quality of your work, a satisfactory rating will not be possible when the time comes for your annual rating."[5]

The situation was such that Trow in November 1976 decided that Irving Blachman, a Senior Referee, should review all of plaintiff's decisions before publication and later advised plaintiff that, although he received a satisfactory rating for 1976, his work performance during 1977 would be observed closely to determine whether he would receive the same rating for that year.[6] During 1977 Blachman wrote over 100 notes and memoranda to Woods, pointing to problems in his written work, and on June 1, 1977, he summarized the grounds upon which he and another Senior Referee found Woods' work deficient: failure to use all of the available evidence in making findings and reaching judgments, unnecessary and injudicious findings against parties, application of incorrect rules and criteria, findings inconsistent with Appeal Board precedent, and unnecessary advice to claimants. In a second memorandum, dated October 6, Blachman recited the continued flaws in Woods' opinions and his "hostile and uncompromising" reactions to constructive criticism and concluded that the work perform-

---

**2.** Since plaintiff has failed to submit a Rule 9(g) statement setting forth controverted facts, *see* note 1 *supra,* "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted" for the purpose of the instant motion. *Cf. SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978). Nor is this defect cured by plaintiff's affidavit in response to the motion, as it merely states vague and conclusory allegations. *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371 (2d Cir.1978) (per curiam); *see Powell v. Workmen's Compensation*

*Bd. of State of N.Y.,* 327 F.2d 131, 137 (2d Cir. 1964); *Royal Indem. Co. v. Westinghouse Elec. Corp.,* 385 F.Supp. 520 (S.D.N.Y.1974).

**3.** Defs. 9(g) Statement ¶¶ 2–6; Aff. of Irving J. Trow; Aff. of David Weisenberg.

**4.** Exhs. C, E, D to Aff. of Irving Blachman; *see* Defs. 9(g) Statement ¶¶ 8–9.

**5.** Exh. A to Aff. of Irving Blachman.

**6.** Defs. 9(g) Statement ¶ 10.

ance after June 1, 1977 remained "unsatisfactory."[7] These reviews, comments and criticisms were within the duties and authority of the reviewing officers.

Section 140 of New York's Civil Service Law requires all departmental agencies of the New York state government to keep and report "performance ratings" of their employees, that is, "an annual summary judgment of the value of an employee's performance and conduct prepared by his supervisors for the purpose of determining the employee's eligibility for salary increment and promotion. Such summary judgment shall be recorded only as 'satisfactory' or 'unsatisfactory.'"[8] Pursuant to this requirement, Blachman in January 1978 filed a "Report of Unsatisfactory Performance": "Mr. Woods has been doing work below an acceptable level and has been unwilling to accept constructive criticism."[9] Under the Rules of the Civil Service Commission and guidelines promulgated by the Department of Labor,[10] plaintiff had the right to appeal his unsatisfactory rating to a "Performance Rating Board," which would conduct an informal hearing "to determine whether or not the rating for this employee will remain unsatisfactory; to afford each party an adequate opportunity to present his case."[11] Plaintiff exercised his right to appeal, and on March 8, 1978, the Board conducted its hearing, with plaintiff and his counsel present.

The Board consisted of three impartial officials of the Department.[12] In the course of its five-hour hearing, Blachman explained the basis for the unsatisfactory rating and submitted forty-eight of Woods' decisions; although the Board did not allow plaintiff to defend each decision orally during the hearing, plaintiff did present his version of events, questioned Blachman at length concerning the rating, and submitted a fifteen-page written answer to the specific criticisms.[13] Upon a consideration of all the evidence, the Board confirmed the rating. Woods then appealed the result to the Industrial Commissioner of New York and to the State's Civil Service Commission. The former affirmed the determination on April 3, based upon a review of the entire record;[14] and the latter agreed with the Board's conclusion on August 21, after an interview of the plaintiff (together with Blachman, Trow, and plaintiff's attorney) by one of the Commission's investigators, who found the rating well justified and the charges of ethnic discrimination wholly unsubstantiated.[15]

Plaintiff thereupon brought two lawsuits—one in state court to overturn the

---

7. Exh. I to Aff. of Irving Blachman (both memoranda). For his critiques of Woods' decisions, see Exhs. H through Q attached to the Blachman Affidavit.

8. Rules and Regulations of the Dep't of Civil Serv. § 35.1(a) (appended to N.Y.Civ.Serv.Law (McKinney 1973)) [hereinafter cited as N.Y.Civ. Serv.Rule §].

9. Exh. T to Aff. of Irving Blachman; see Defs. 9(g) Statement ¶ 14.

10. N.Y.Civ.Serv. Rules § 35.6; Exh. U to Blachman Aff.

11. Exh. U to Blachman Aff. According to the guidelines, the hearing is to be an "informal administrative hearing" with no minutes or tape recording, and each side is to be given an opportunity to present its version of events, with the appellant having the right to have counsel present.

12. Defs. 9(g) Statement ¶ 18; see Aff. of Martin Rice ¶ 13.

13. Defs. 9(g) Statement ¶¶ 19, 23; Aff. of Martin Rice ¶¶ 5–8.

14. Exh. X to Aff. of Irving Blachman.

15. Exhs. 6–13 to Aff. of Paul Vella. Exhibit 12 is a comprehensive memorandum written by James Dermody, Director of Personnel Service Division of the Civil Service Commission; after reviewing the basic claims, the memorandum concluded that the appeal be dismissed:

The agency's thorough documentation supports the basis of the rating, and its attempts at correcting the appellant's approach to his cases are adequate. . . . The disputed cases . . . most often involved questions so overt that the Appeal Board Chairman could describe a decision as injudicial.

The appellant's charge that the agency failed to uniformly apply rating standards lacks adequate support; he refused to provide specifics and names. He also failed to provide any evidence to support his contentions of ethnic discrimination.

unsatisfactory rating and to compel the Commission to establish minimum procedural standards for such hearings, and the instant suit in federal court, alleging violations of the Fourteenth Amendment and New York law. Although there is much to the defendants' position that this Court abstain from exercising jurisdiction, since the state proceeding presents many of the same issues, the Court's word-by-word review of the extensive record and its consideration of the arguments of the parties convinces it that the matter should be disposed of on the merits.[16] Accordingly, defendants' motion for summary judgment is granted, and the Court dismisses the complaint against all defendants.[17]

## II

Plaintiff's claims can be distilled to two charges: that he was the victim of invidious discrimination depriving him of equal protection of the laws and that the procedures afforded for him to challenge this discrimination were unfair, fraught with bias and prejudice, and contrary to the mandates of due process. Yet the documents and particularized affidavits in the case clearly negate these claims; they foreclose any contention of the existence of a genuine issue of material fact of invidious discrimination or of denial of procedural due process.

## A

■ The complaint alleges that Woods was discouraged from applying for the job of Referee, given inadequate training compared with "all other referees who have joined the agency," and treated in an unfair or harassing manner by his supervisors. While it is true that the regulations of the Civil Service Commission require "so far as practicable that rating standards [be] applied uniformly within the agency,"[18] there is no credible evidence that plaintiff was treated differently in any respect or that the standard applied to him was stricter than that applied to other Referees. For example, his own affidavit admits to substantial training opportunities—"listening to recorded cassettes of meetings conducted several years prior, reading a voluminous set of dog-eared yellowed notes  .  .  . reading some cases from a [syllabus] prepared in prior years, brief contact with Mr. Trow and Mr. Tinaher  .  .  .  and discussions with the attorneys who were being trained for lower level positions"—undermining its assertion that he was given cursory and meaningless instruction; nowhere does plaintiff rebut defendants' affidavits describing the analogous education of other Referees.

Similarly unsubstantiated are Woods' conclusory allegations that his supervisors retaliated against him for filing a human rights complaint and harassed or conspired against him because he was an Irish nonpolitical appointee.[19] To the contrary, the copious notes and memoranda written by the individual defendants fully refute his unsupported assertions. The record establishes that the defendants exercised great patience and reasonableness, and it is Woods himself who often appears preemptory and petulant. Plaintiff's supervisors were, if anything, lenient in giving him a satisfactory rating for 1976, despite numerous complaints, and working with him to try to improve the quality of his decisions.

■ Moreover, any discrimination against plaintiff on his asserted grounds of "ethnicity, nepotism, and political influence" is not the sort of "racial discrimina-

---

**16.** *Compare Starrs v. Bock,* 77 Civ. 5435 (LPG) (S.D.N.Y. Dec. 21, 1978) *with Brown v. Bronstein,* 389 F.Supp. 1328, 1332–33 (S.D.N.Y. 1975); *cf. Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**17.** The Court does not reach the claims of various defendants that they are immune from a damages action.

**18.** N.Y.Civ.Serv.Rules § 35.5(a)(6).

**19.** *Teachers United for Fair Treatment v. Ank-*

tion" prohibited by section 1981.[20] Nor would any "distinctive" treatment asserted by plaintiff be actionable under section 1983 as an "invidious discrimination," since plaintiff asserts no fundamental constitutional interest, nor is he a member of a disadvantaged group for which the Fourteenth Amendment carries special solicitude, and since the supervisors' treatment appears rational at every point.[21] Thus, in the light of myriad complaints about his work, his own recalcitrant attitude, and the constructive efforts of Trow and Blachman, Woods has no tenable claim that he was denied "equal protection of the laws."[22]

### B

The complaint also objects to the Department's issuance of an unsatisfactory rating, "defaming, slandering, libeling and impinging on the plaintiff[']s employment and reputation and adversely affecting his status as an employee by denying him an incremental raise and consideration for promotion" and claims that no meaningful appeal was afforded. This procedural due process

challenge is untenable because there was no "deprivation of life, liberty or property" protected by the Due Process Clause and because the State's actions were accompanied by several opportunities for plaintiff to be heard in opposition to the unsatisfactory rating.

In *Bishop v. Wood*[23] the Supreme Court warned that a "federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.  .  .  . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."[24] Specifically, the Court held that the state employee fired from his job suffered no "deprivation" of (a) a property interest, because North Carolina law did not create any "expectancy" or "entitlement" of continued employment,[25] or (b) a liberty interest, because there is no cognizable damage to reputation when the State does not publicize its reasons for such dismissal.[26]

■ *Bishop* rebuts plaintiff's claim of a protected due process interest here. First,

*er*, 445 F.Supp. 469, 479 (S.D.N.Y.1977); *see* cases cited in note 2 *supra*.

**20.** *See Enriquez v. Honeywell, Inc.*, 431 F.Supp. 901, 904–06 (W.D.Okla.1977) (Spanish-American); *Budinsky v. Corning Glass Works*, 425 F.Supp. 786 (W.D.Pa.1977) (Polish-American); *Kurylas v. U.S. Dep't of Agriculture*, 373 F.Supp. 1072, 1075–76 (D.D.C.1974), *aff'd*, 169 U.S.App.D.C. 58, 514 F.2d 894 (1975) (no cause of action under § 1981 for low "performance rating" allegedly based on "national origin"); *cf. Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (same rule under § 1982). *But cf. Gomez v. Pima County*, 426 F.Supp. 816, 818–19 & n. 1 (D.Ariz.1976) (Mexican-Americans have no claim under § 1981 based on national origin, but perhaps have claim based on race).

**21.** *Gallagher v. Codd*, 407 F.Supp. 956, 959–60 (S.D.N.Y.1976) ("[T]his Court can find no basis for concluding, that [plaintiff] is a member of a 'suspect class' or has been denied a 'fundamental right' as a result of his dismissal. Therefore, the State need only show that there is a rational relationship between some legitimate governmental interest and the governmental mandate giving rise to plaintiff's dismissal in order to withstand his equal protection arguments."); *cf. Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 49

L.Ed.2d 520 (1976) (no fundamental right to government employment).

**22.** *See Carlyle v. Sitterson*, 438 F.Supp. 956, 962–63 (D.N.C.1975); *United Steelworkers of America v. University of Alabama in Birmingham*, 430 F.Supp. 996, 1003 (N.D.Ala.1977); *Tichon v. Harder*, 308 F.Supp. 839 (D.Conn.1970), *aff'd*, 438 F.2d 1396 (2d Cir. 1971).

**23.** 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

**24.** *Id.* at 349–50, 96 S.Ct. 2074, 2080 (footnote omitted).

**25.** *Id.* at 344–47, 96 S.Ct. 2074; *see Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Berns v. Civil Serv. Comm'n, City of N.Y.*, 537 F.2d 714 (2d Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977).

**26.** 426 U.S. at 347–49, 96 S.Ct. 2074; *see Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 575, 92 S.Ct. 2701 (1972); *Sartin v. City of Columbus Utilities Comm'n*, 421 F.Supp. 393, 396–97 (N.D.Miss.1976), *aff'd mem.*, 573 F.2d 84 (5th Cir. 1978).

the laws, regulations and guidelines promulgated by the State and its agencies create no expectation among employees that they will receive satisfactory ratings. Indeed, the requirement that the performance rating be conducted *each year* indicates that no employee is assured of a permanent satisfactory evaluation: the very purpose of an annual review is to place employees on notice that their conduct must satisfy minimal standards from year to year.[27] Additionally, there is no evidence that the rating has been publicized, except as it has become known by reason of plaintiff's filing two lawsuits to challenge the evaluation.[28] Finally, a more general reason indicates that the present case is governed by the caveat in *Bishop*: since plaintiff has not been discharged on account of his unsatisfactory rating, the deprivations—loss of future salary increments and potential for professional advancement—are speculative or *de minimis*. The interests asserted are of far less importance than the "'grievous loss'" asserted in *Goldberg v. Kelly*[29] and other cases finding a due process right.[30] The Court holds that plaintiff's alleged interest in a satisfactory rating is not so fundamen-

tal that it is constitutionally protected by the Due Process Clause.[31]

■ Although the Constitution imposes no procedural minima, the Civil Service Commission has, on its own commendable initiative, provided for protection against arbitrary or incorrect ratings. Even if the Due Process Clause were to apply in this case, its procedural requirements—"notice and opportunity for hearing appropriate to the nature of the case"[32] —were more than satisfied. Informally, throughout 1977, plaintiff was given particularized criticisms of his work and two interim warnings that his performance would be found unsatisfactory if there were no improvement, and he was accorded opportunities to respond to these criticisms; the Department's Performance Rating Board provided him with a meaningful and complete chance to answer the charges in person, and assisted by counsel, before an impartial panel of experts; subsequent review by the Industrial Commissioner and the Civil Service Commission was a further check on possible arbitrariness or bias. The basic mandate of procedural fairness, "an opportunity to re-

**27.** Thus the ordinance in *Bishop* posed a far stronger argument for entitlement than do the law and regulations in the present case. *See* 426 U.S. at 355–61, 96 S.Ct. 2701 (White, J., dissenting).

**28.** Contrast the case of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), where the Court held that there was no due process protection for one's reputation, even where the government circulated information that was arguably defamatory.

**29.** 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)); *cf. Cafeteria Wkrs. v. McElroy,* 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961) (Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest").

**30.** *See, e. g., Ingraham v. Wright,* 430 U.S. 651, 672–74, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("unjustified intrusions on personal security"); *Goss v. Lopez,* 419 U.S. 565, 572–76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (public education); *Wolff v. McDonnell,* 418 U.S. 539, 556–58, 94

S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prison good-time credits); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (suspension of license implicates "important interests" of licensees); *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring) (garnishment of wages not *de minimis*).

**31.** *Accord, Teachers United For Fair Treatment v. Anker,* 445 F.Supp. 469, 472–73 (S.D.N.Y. 1977) (no due process interest in "satisfactory" rating: "Simply put, absent termination of that employment, an 'interest' in employment does not rise to the level of a property or liberty right constitutionally protected by procedural due process."); *Koscherak v. Schmeller,* 363 F.Supp. 932 (S.D.N.Y.1973) (three-judge court), *aff'd mem.,* 415 U.S. 943, 94 S.Ct. 1462, 39 L.Ed.2d 560 (1974).

**32.** *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–657, 94 L.Ed. 865 (1950) (quoted in *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)); *see* Friendly, *"Some Kind of Hearing,"* 123 U.Pa.L.Rev. 1267 (1975).

fute the charge," [33] was provided to plaintiff. To hold otherwise would transmute due process from a flexible guarantee of procedural fairness into an unworkable straightjacket, and to ignore the functional needs of the administrative process.[34]

Accordingly, the Court grants defendants' motion for summary judgment and dismisses the complaint.[35]

---

**33.** *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (quoted in *Codd v. Vegler,* 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977)); *cf. Allen v. City of Greensboro, N.C.,* 322 F.Supp. 873 (D.N. C.), *aff'd,* 452 F.2d 489 (4th Cir. 1971) (procedural fairness in informal hearing leading to demotion of policeman).

**34.** *Cf. Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (functional approach); *Basciano v. Herkimer,* No. 78--7035

(2d Cir. 1978); *Frost v. Weinberger,* 515 F.2d 57 (2d Cir. 1975) (Friendly, J.), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976).

**35.** Because the Court finds plaintiff's federal claims to be meritless, it exercises its discretion to dismiss the pendent state claims. *United Mine Wkrs. of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).